```
 1              IN THE UNITED STATES COURT OF FEDERAL CLAIMS

 2

 3

 4   MOHAMAD E. TAHA (Deceased),    )

 5        and                      )

 6   SANAA M. YASSIN, his wife,     ) Case No.

 7        Plaintiffs,              ) 17-1174T

 8              vs.                 )

 9   UNITED STATES OF AMERICA,      )

10        Defendant.               )

11

12

13

14                       Suite 716

15         Howard T. Markey National Courts Building

16              717 Madison Place, N.W.

17              Washington, D.C.

18         Thursday, September 5, 2019

19                    2:30 p.m.

20                     Hearing

21

22       BEFORE:  THE HONORABLE CHARLES F. LETTOW

23

24

25   Transcribed by:  Sara J. Vance, CERT
```

2

Mohamad E. Taha, et al. v. USA                              9/5/2019

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFF:
 3            ALI M. TAHA
 4            247 Dove Trail
 5            Bradenton, Florida   34212
 6            (941) 896-3471
 7
 8    ON BEHALF OF THE DEFENDANT:
 9            ELIZABETH A. KANYER, ESQ.
10            DAVID PINCUS, ESQ.
11            U.S. Department of Justice - Tax Division
12            Post Office Box 480
13            Ben Franklin Station
14            Washington, DC   20044
15            (202) 514-0600 / (202) 514-9440 (fax)
16            elizabeth.a.kanyer@usdoj.gov
17
18
19
20
21
22
23
24
25
```

Mohamad E. Taha, et al. v. USA                          9/5/2019

```
 1                    P R O C E E D I N G S
 2                    -   -   -   -   -
 3          (Proceedings called to order, 2:30 p.m.)
 4          THE COURT:  Good afternoon.
 5          MS. KANYER:  Good afternoon, Your Honor.
 6          MR. TAHA:  Good afternoon, Your Honor.
 7          THE COURT:  Thank you.  It sounds like we're
 8   ready to begin, and we shall.  The case before the Court
 9   this afternoon is Mohamad E. Taha and others versus
10   [brief audio lapse] 4.  We're here to address the
11   Plaintiffs' motion for a protective order or a motion to
12   abort their claim for tax refund if the protective order
13   is denied.  We have the Government's response, and we
14   also have Plaintiffs' reply.
15          Somewhat unusually, I'm going to ask Mr. Taha
16   if you will take just a minute or so to explain the basis
17   for your motion, although we've certainly taken a look at
18   the papers.  But if you would -- go ahead.
19          MS. KANYER:  Sorry, Your Honor.  I just wanted
20   to mention that my chief, David Pincus, is also here with
21   me.
22          THE COURT:  Aah, good.  Welcome, Mr. Pincus.
23          MR. PINCUS:  Thank you, Judge Lettow.
24          THE COURT:  Mr. Taha, can you just take a
25   minute or so -- not like an extended exegesis, but just
```

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    indicate what the broad basis for your motion is.

2                 MR. TAHA:  Well, Your Honor, the basis is

3    really at least a couple of issues, serious issues.

4    The first one was counsel's office harassing to my

5    family.  That was -- to me, that was serious and uncalled

6    for.  And those -- that harassment, as I mentioned it in

7    my motion, on behalf of Plaintiffs, that harassment

8    included several telephone calls.  And those telephone

9    calls included other phone calls that when I responded to

10   the -- to answer the phone calls from counsel's office, I

11   was hung up on, I don't know.  That, to me, Your Honor,

12   that is really harassing us.

13                And I have a family member who, number one, is

14   my wife.  She answers of -- of the phone call from

15   counsel's office, and she was really furious at me why

16   was she involved and getting questions about so-and-so,

17   where they live, and being served subpoenas maybe in the

18   future.  And the other thing is another family member,

19   who is in California, she was as well called for the same

20   questioning.

21                That's why, in essence, I said I cannot expose

22   my family to such harassment.  And everything else just

23   to recover on behalf of the Plaintiffs $14,000.  To me, I

24   basically came to the conclusion it's not worth it at all

25   to get my family exposed to such harassment.

Mohamad E. Taha, et al. v. USA                                9/5/2019

```
 1              The other issue is that I believed counsel's
 2     office -- or actually counsel herself -- with respect,
 3     she violated your order.  Your order specifically
 4     mentioned Rules 26 through 37 to complete the discovery.
 5     And when I receive a copy of subpoenas in accordance to
 6     Rule 45, that basically prompt me -- prompted me to
 7     object to that subpoena because it's not within your
 8     rules, Your Honor.  When you specifically made a
 9     clarification to my request for the discovery, you
10     specifically said Rules 26 through 37 are the basis for
11     the discovery.
12              THE COURT:  Thank you.
13              And I wonder if, Ms. Kanyer, would you announce
14     yourself as counsel for the Government.
15              MS. KANYER:  Sure, Your Honor.  Elizabeth
16     Kanyer for the United States.
17              THE COURT:  And would you please give me a
18     minute or so's response to Mr. Taha's claims.
19              MS. KANYER:  Sure, Your Honor.  You know, we
20     object to the protective order.  We view this as another
21     missive by which Plaintiffs are attempting to foreclose
22     our ability to conduct discovery in this case.  You know,
23     first of all, we don't believe that the subpoenas are a
24     form of -- or we don't believe that we violated the
25     Court's order because the subpoenas are a form of
```

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    discovery.

2              Case law suggests or says that the subpoenas

3    are a form of discovery.  We cited a number of cases to

4    Your Honor, such as Marvin Lumber and McDonald's, which

5    collects a number of cases.  Marvin Lumber described

6    that, you know, the Rule 45 subpoenas are encompassed

7    within the discovery rules.  There's also uniformity

8    amongst the other rules such as Rule 34 and Rule 30

9    related to depositions as well as request for production

10   of documents.

11             We also believe that Plaintiffs haven't shown

12   that there was good cause for a protective order.  With

13   respect to the bonding companies, Plaintiff hasn't said

14   anything why there's any sort of harm or undue burden.

15   With regard to the other shareholders, we admittedly did

16   call the shareholders to see if they would -- wanted to

17   waive service as opposed to getting a formal processor.

18             My understanding of how it happened was that we

19   had a list of numbers and addresses, and so we called

20   those numbers to see whether we could get a hold of

21   anybody.  We weren't able to get a hold of anybody, so a

22   litigation assistant, she, you know, reached out a couple

23   of times to see so we didn't have to have people show up

24   at their house or try to track them down.  We felt like

25   that would be more trouble.  So we went about it at that

Mohamad E. Taha, et al. v. USA                                     9/5/2019

1    route.

2              But we don't believe at this point Plaintiffs

3    have met their burden to show that a protective order is

4    warranted in this case.

5              THE COURT:  Thank you.  The Court notes that

6    this is really the fourth occasion to address the

7    discovery following -- that's needed following a Court of

8    Appeals remand.  And that discovery is necessary to

9    address the very specific and discrete questions that the

10   Court of Appeals raised about a potentially meritorious

11   claim that Plaintiffs have.

12             We ought to stop this at some point and

13   essentially go on and complete discovery.  We do have a

14   scheduling order in place that contemplates completion of

15   discovery by the 4th -- fact discovery by the 4th of

16   October.  And we also have a trial scheduled for December

17   9th and 10th in the Tampa area.  I think we have a

18   courtroom.  I think it's in the Bankruptcy Court.

19   Scheduling a courtroom in Tampa in December, especially

20   early, mid-December, is not easy, and we've done it as

21   far as I can tell.

22             So what I propose to do is address the need for

23   completion of discovery in an expeditious manner and for

24   preparation of trial.  It should be a relatively simple

25   trial, given the discrete issues that have been

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    identified.

2              Mr. Taha, are you willing to -- well, let me

3    just note also that Rule 45 is encompassed specifically

4    within the discovery rules.  It's cited there as an

5    adjunct basically.  So the objection, Mr. Taha, you have

6    regarding that Rule 45 as being outside the discovery

7    rules is not well taken.

8              Then let's deal with the issues of the

9    shareholders and your response in complete form to the

10   Government's discovery request.  What do you say about

11   that specifically?

12             MR. TAHA:  Well, Your Honor, I disagree.  There

13   is nothing -- nothing that counsel requested from the

14   bonding companies that I have not provided.  There is

15   nothing that she requested that I have not provided.  If

16   counsel wants a full copy of the complaint by the bonding

17   companies, that can be done on the Government's cost

18   because they are voluminous.  And there is more than one

19   complaint by bonding companies.  Actually, I didn't even

20   mention others.

21             Anyway, Your Honor, if you want to change your

22   rules for the discovery that you issued specifically

23   between Rules 26 through 37, of course, it's your right

24   to do that.  But I disagree to it because you were

25   specific because when I requested a clarification for

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    your discovery, you came back and you issued an order,
2    and you respectfully and kindly clarified my request for
3    the clarification to the discovery.  And you specifically
4    said 26 through 37.  If you want to change that to
5    include 45, I cannot do anything about it.  It's your
6    right, but I basically disagree with your assessment that
7    it's part of the discovery.
8              What is part of the discovery that is not
9    included between the Rule 26 through 37?  Subpoenas?
10   That -- that's not -- that's not just.
11             THE COURT:  Part of the problem, Mr. Taha, is
12   that the discovery rules in 26 through 37 make reference
13   to and incorporate Rule 45 as an alternative means for
14   gaining responses.  Do you understand?
15             MR. TAHA:  I didn't -- I didn't -- I'm sorry, I
16   didn't see that.
17             THE COURT:  Well, it's just an adjunct to the
18   rules.  It essentially provides an alternate route for
19   obtaining responses.  So that's why the Court sees no
20   need whatsoever to revise or amend any of its prior
21   orders on scheduling discovery or dealing with discovery
22   in this case.
23             Let's talk a little bit about the Government's
24   proposed subpoenas to the bonding companies.  Ms. Kanyer,
25   have those subpoenas actually been issued?

Mohamad E. Taha, et al. v. USA                                9/5/2019

1              MS. KANYER:  Those subpoenas have been issued.

2              THE COURT:  Have you received responses?

3              MS. KANYER:  I have received partial responses

4    somewhat recently from those two bonding companies.

5              THE COURT:  All right.  When you say "partial

6    responses," are there still matters outstanding?

7              MS. KANYER:  Yes, from based on my review, they

8    were incomplete responses to the subpoenas.  So my intent

9    is to go back, but I was awaiting this hearing before

10   going back.

11             THE COURT:  Well, that's understandable.  Let's

12   talk a little bit about the fact or not that the

13   responses basically are intended to furnish the

14   additional materials that Mr. Taha has not provided in

15   response to requests to him.  Is that what you're driving

16   at?

17             MS. KANYER:  Twofold.  One is, yes, to get the

18   complete documents.  I believe in Plaintiffs' reply

19   Plaintiffs said that only the first page was really

20   necessary, and we disagree.  I'd like to see the entire

21   final judgments related to this case -- or related to

22   that case.

23             With respect to the bonding companies, I think

24   they directly speak to the issue of worthlessness.

25   Plaintiffs have been alleging that the purported debt

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    became worthless in 2004, and the bonding companies, I
2    think, can directly speak to that.  They -- you know,
3    whether or not there were payments happening outside of
4    the 2004 time period, I think they'll have direct
5    information related to that as far as Atek Corporation is
6    concerned.

7              THE COURT:  All right.  Thank you.

8              Mr. Taha, do you have any objection to the
9    subpoenas to the bonding companies?

10             MR. TAHA:  Your Honor, she didn't -- counsel
11   already has done that.

12             THE COURT:  Well, I understand.

13             MR. TAHA:  And my point is -- my point, Your
14   Honor, I'm convinced that counsel is not going to get any
15   more than what I have provided.  I have provided the
16   bonding companies' letters to the project owners to --
17   not to release any funds to Atek Construction, that
18   number one issue that harmed Atek Construction by the
19   bonding company.

20             In addition, and more essentially to that, is
21   the bonding companies' complaints in court, and the -- in
22   the United States District Court of California.  Your
23   Honor, I provided probably more than what the bonding
24   companies have provided or will provide, and they're not
25   going to give Ms. -- counsel any feedback to worthless

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Mohamad E. Taha, et al. v. USA                           9/5/2019

1    debt that actually bonding companies have (inaudible)
2    Atek.   They're not going to admit they (inaudible) Atek.
3    They're going to probably say -- I don't know what
4    they're going to say.   I cannot speak on their behalf,
5    but their complaints speak for themselves, Your Honor, as
6    far as Atek going out of business in the year 2004.
7              THE COURT:   Well, if the bonding companies
8    come up with dissimilar information, that will just,
9    in effect, verify what you have already provided.   If
10   they come up with additional information, that might
11   assuage the Government's concern that they don't have a
12   full record on which to act.   So the Court really takes
13   that -- the objection to the subpoenas to the bonding
14   companies as being unavailing.
15             Let's talk a little bit about the efforts to
16   reach -- I take it it's yourself, Moussa Taha, and I'm
17   going to mispronounce this name, Eyad Khalil.
18             Are those people the others that, Ms. Kanyer,
19   you're attempting to reach?
20             MS. KANYER:   Yeah, that's correct.
21             THE COURT:   And on what basis are you
22   attempting to reach them?
23             MS. KANYER:   As they were former shareholders
24   at Atek Corporation, we believe that they will have
25   unique information related to what we view as the three

Mohamad E. Taha, et al. v. USA                               9/5/2019

1   issues related to the bad business debt portion, which

2   looks at, you know, whether it's bona fide debt or a

3   capital contribution, whether it's business bad debt or

4   nonbusiness bad debt, and then again the worthlessness.

5   We think that they will have direct information relating

6   to the operations of Atek, when it went out of business,

7   Mr. Taha -- Plaintiff Taha's role in Atek Corporation.

8   And we think that they can speak directly to that

9   information.

10          THE COURT:  Mr. Taha, what is the basis for

11  your objection to those contacts?

12          MR. TAHA:  Your Honor, they are not relevant to

13  the case.  They aren't -- they are totally -- even if

14  counsel succeeds in making her contacts, they know

15  nothing about business bad debt.  They wouldn't even know

16  what business bad debt -- all they would know, Your

17  Honor, is that Atek lost everything.  That's it.  And

18  Atek filed form 1120S income tax return that shows losses

19  -- huge losses because of the bonding company taking --

20  takeover of Atek.

21          Again, those -- those people are not going to

22  be able to know what business bad debt is.  They know

23  nothing about this -- this current case of Plaintiffs in

24  requesting a claim for a tax refund.  They know nothing.

25          THE COURT:  Well --

Mohamad E. Taha, et al. v. USA                           9/5/2019

1              MR. TAHA:  So in my opinion, Your Honor, it's
2     nothing but harassment, right or wrong, but that's what I
3     believe we're in.  The other thing, Your Honor, is -- I'm
4     sorry, I'm a little bit getting -- I'm sorry to say I'm
5     really frustrated, Your Honor, because this is -- I'm
6     going -- I'm getting to the point, and I'm going to
7     mention to you, Your Honor, is it possible that you abort
8     the case?
9              THE COURT:  Well, you could always dismiss the
10    case voluntarily.
11             MR. TAHA:  No, no, no.  I requested an
12    abortment.
13             THE COURT:  Well, it's not abort the case, but
14    it's a voluntary dismissal.  You could always do that,
15    but the problem is, Mr. Taha, that you're representing a
16    couple of people, that is Mohamed E. Taha and Sanaa M.
17    Yassin, who have a potentially meritorious claim.
18             MR. TAHA:  That is true, Your Honor.
19             THE COURT:  What?
20             MR. TAHA:  That is true.
21             THE COURT:  Well --
22             MR. TAHA:  And I'm representing them because I
23    felt I was -- I have been and continue to be responsible
24    for them.
25             THE COURT:  Well, why don't you just -- you're

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    spending -- I just offer the observation, and it's just
2    an observation, it's not telling you what to do, but I'm
3    suggesting that we're spending more time dealing with
4    protective orders and blocking discovery requests and
5    that sort of thing than we would be actually just going
6    forward with simple discovery and then trial.
7                This is not something that has lots of legal
8    issues independent of factual issues.  We just need to
9    move forward on the factual issues very promptly and let
10   the legal issues play out against the facts that are
11   established by the fact discovery.  It's that simple.
12   It's not an astonishingly broad case.
13               Let me ask a question.  Are you a shareholder,
14   or were you a shareholder, in Atek?
15               MR. TAHA:  Of course, Your Honor.
16               THE COURT:  Who --
17               MR. TAHA:  It's on the record.
18               THE COURT:  -- all right.  Who -- do you have a
19   relationship with Moussa Taha and Eyad Khalil?  How are
20   they related to you, if they are at all?
21               MR. TAHA:  He's related.  He's one of the --
22   he's a relative.
23               THE COURT:  He is?  And --
24               MR. TAHA:  I mentioned that everyone was, Your
25   Honor.

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1                 THE COURT:  All right.

2                 MR. TAHA:  I mentioned that.

3                 THE COURT:  All right.  And Khalil is also a

4      relative?

5                 MR. TAHA:  He -- I thought you were referring

6      to him.  You said Eyad Khalil, and he's a relative.

7                 THE COURT:  Okay, that helps.  Well, if they

8      would just answer within their own personal knowledge and

9      their knowledge of the law as well, simple subpoenas,

10     that should suffice to eliminate any possible harassment.

11     They really are not being, I don't think, being harassed.

12     They're just being asked, I hope, to answer a few

13     questions.

14                MR. TAHA:  Your Honor, when I get four or five,

15     six phone calls, some of which I was hung up on for

16     whatever reason because they don't want to hear me again,

17     and my wife ended up answering one of the phone calls, my

18     wife was not happy about getting involved and

19     questioning.

20                My wife and other members are -- of my family

21     has -- they have nothing to do with the case.  They

22     have nothing to do with Atek, Your Honor, nothing.  There

23     is -- their names are not ever mentioned in any lawsuit

24     or claims by the bonding companies.

25                THE COURT:  Let's just stop a minute.

Mohamad E. Taha, et al. v. USA                                9/5/2019

1            Ms. Kanyer, are you reaching beyond the three
2   names that you've identified in your response to Mr.
3   Ali's motion?
4            MS. KANYER:  No.  We're just anticipating
5   issuing subpoenas to those three.  I think what happened
6   was our list of information, it had a number of different
7   numbers on there that didn't go to voicemail.  And so my
8   understanding is that our litigation assistant who is
9   making these phone calls, you know, was kind of hoping
10  that one of these would actually reach somebody, and so
11  she, I think, left voicemails but wasn't sure if that was
12  the right contact information.  And so, you know, to the
13  extent there were multiple calls, that's why.
14           THE COURT:  All right, thank you.
15           MR. TAHA:  Your Honor, I disagree with that.
16  That was not true, Your Honor.
17           THE COURT:  In what respect was it not true in
18  your view?
19           MR. TAHA:  My family member, Your Honor, in
20  California -- a family member, it's my daughter, she
21  was contacted by Ms. -- by Ms. Kanyer's assistant, and
22  that -- that was not what I -- that's not what I heard
23  from Ms. Kanyer saying it as a fact.  My daughter in
24  California, she was contacted.  Why did she say, no, I
25  did not contact any other family members of Mr. Taha?

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    She did.  She -- her counsel talked to my wife.

2              THE COURT:  Well --

3              MR. TAHA:  It was a -- it was a coincidence or

4    not, my wife beat me to the phone and she answered the

5    phone.  So that is additional to the other family member

6    in California, Your Honor.  And denying that is totally

7    wrong.

8              THE COURT:  All right.  Let's just ask Ms.

9    Kanyer, did you talk with or did someone on your behalf

10   talk with Mr. Taha's daughter?

11             MS. KANYER:  Not that I'm aware of.  We

12   received from our librarian a list of numbers that were

13   related to these individuals, and there were -- my

14   recollection -- numerous numbers related to each

15   individual.  And so we attempted to reach them at a

16   couple of the numbers that were on the list.  And so I

17   can envision how it might have happened if it was

18   correlated to the wrong person, but it was not

19   intended to reach anyone other than those three people

20   we listed -- Moussa, Ali, and Eyad.

21             THE COURT:  Thank you.  The Court will actually

22   deny the motion for a protective order on that basis.

23   There really isn't any showing of harassment.  The

24   subpoenas may be issued.  We'll try to issue an order in

25   that respect tomorrow.

Mohamad E. Taha, et al. v. USA                          9/5/2019

```
1              What I'm concerned about is the base proof
2    whether the Plaintiffs filed a claim for refund
3    respecting 2003 taxes.  What is the progress on that, Ms.
4    Kanyer?
5              MS. KANYER:  I'm sorry, Your Honor, can you
6    repeat your question?  I'm not sure exactly what you're
7    wanting us to respond to.
8              THE COURT:  Well, the base question the Court
9    of Appeals identified and the Court had identified
10   earlier in the proceedings in the case was whether the
11   claimants had filed a claim for refund respecting their
12   2003 taxes.
13             MS. KANYER:  With the IRS?
14             THE COURT:  Yes.
15             MS. KANYER:  Your Honor, we haven't received
16   any additional information that Plaintiffs filed a claim
17   outside of what we had received previously.  Right now,
18   we're really looking at that business bad debt deduction
19   issue, and that's what the subpoenas have been related
20   to.  And going forward, we anticipate taking depositions,
21   and so that's where we stand right now.
22             I will note that because of these motions,
23   we've lost about ten weeks where I've held subpoenas and
24   discovery in abeyance pending the Court's ruling on these
25   motions.  So we're a little concerned with a crunch for
```

Mohamad E. Taha, et al. v. USA                        9/5/2019

1    time kind of further looking into these issues.

2              THE COURT:  And the Court is really not

3    inclined to extend the time for fact discovery any

4    further than is specified in the scheduling order that

5    was issued on April 16th, but let's take that as it

6    comes.

7              Mr. Taha, how have you progressed in advancing

8    the question whether or not a claim for refund was filed

9    respecting the 2003 taxes?

10             MR. TAHA:  Your Honor, another (inaudible) I

11   don't know if you recall, Your Honor, I objected or I

12   expressed a concern about concentrating this trial on the

13   2003 claim.  And you agreed to me that if 2003 claim was

14   included in the actual 2004 claim -- 2004 claim includes

15   both 2002 and 2003 tax refunds, excuse me.  And in a way

16   you -- you -- I don't know if it was a hint or it was a

17   contemplation, but you, Your Honor, that you will

18   consider the whole claim as claimed in the year 2004.

19   And that year 2004 is a year within which the bad debt

20   became worthless.

21             THE COURT:  All right.

22             MR. TAHA:  In addition to that, Your Honor --

23             THE COURT:  Yes.

24             MR. TAHA:  -- I refer you and counsel to the

25   IRS letter of 2011, I believe it is February 2 --

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

21
Mohamad E. Taha, et al. v. USA                          9/5/2019

1   February 11 or 16, 2011, where the IRS acknowledged the
2   2004 claim was correctly filed within the seven-year
3   statute of limitations.
4            THE COURT:  No, you did raise the fact that a
5   claim for refund was made by filing an amended 2004 tax
6   return on November 1, 2009.  And one of the problems is
7   whether or not the 2004 amended tax return encompassed
8   2003 as well, and you say it did.
9            MR. TAHA:  Absolutely, Your Honor.
10           THE COURT:  Ms. Kanyer, what is your position
11  in that respect?
12           MS. KANYER:  Our position is that for tax year
13  2004, my understanding is that the Federal Circuit has
14  already affirmed your ruling that the Court doesn't have
15  jurisdiction over a refund claim for 2004.
16           THE COURT:  That's true, but on the other hand,
17  the question arises whether that amended return addressed
18  2003 taxes as well.
19           MS. KANYER:  I guess I'm not understanding the
20  distinction.  And my understanding is that factually in
21  2004, for tax year 2004, Plaintiffs attempted to file an
22  amended return that included the amount paid for tax
23  years 2002 and 2003.
24           THE COURT:  Yes.
25           MS. KANYER:  And in -- but the claim for refund

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Mohamad E. Taha, et al. v. USA                          9/5/2019

1    for 2004 was dismissed for lack of jurisdiction and
2    affirmed in the Federal Circuit.  So our view would be
3    that the tax year related to 2004 would not be at issue.
4    And we're only looking at the tax -- or a refund claim
5    for the 2003 tax year, which I believe is a little over
6    $5,000.
7           THE COURT:  So you think the only amount at
8    issue is that that was actually paid in 2003; is that
9    correct?
10          MS. KANYER:  Correct.
11          THE COURT:  Well, 2002 and 2004 taxes were
12   specifically affirmed by the Court of Appeals, so they're
13   not at issue any longer, but we do have the interesting
14   question whether or not the 2004 amended return wrapped
15   in a claim for refund respecting 2003 taxes.
16          MS. KANYER:  I think that's an issue that I
17   would have to look further into because it's a little bit
18   different, from my understanding, of the Federal
19   Circuit's ruling.
20          THE COURT:  Well, I take it Mr. Taha is saying
21   that -- well, he is saying that Plaintiffs filed an
22   amended 2003 tax return, and the amended return was filed
23   November 7th, and that that also sought a refund.  Is
24   that correct, Mr. Taha?
25          MR. TAHA:  Yes, Your Honor.

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1              THE COURT:  All right.

2              MR. TAHA:  Your Honor, and let me make another

3    comment in regard to what the Federal Circuit and your

4    Court, Your Honor, both courts, I believe they made a

5    mistake in breaking up -- specifically the Appeals Court,

6    specifically it broke up the claim and made the mistake

7    in ruling that it's worth looking at 2003 only and forgot

8    the 2002 as you denied it, or dismissed it earlier,

9    actually dismissed both 2002 and 2003 claims filed within

10   -- within 2004.

11             But, anyway, when I filed a rehearing request

12   to the Appeals Court, they did not consider it.  They

13   ignored it, and they filed the remand to your Court to

14   take care of.

15             THE COURT:  Well, they did.

16             MR. TAHA:  In essence -- in essence, Your

17   Honor, there is a proof that the 2004 included both

18   years, 2002 and 2003, for $14,127 -- or 177 dollars.

19   There is a proof to that, and that 2004 claim, again and

20   again, it was approved or determined by the IRS as

21   correctly filed within the seven-year statute of

22   limitation.  I cannot keep repeating the same thing over

23   and over because I have done it and will continue

24   reemphasizing this fact.

25             THE COURT:  All right.  The Court will allow

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    you definitely to do that, Mr. Taha.  That's not a

2    problem.  I'm just trying to sort out factually what's

3    going on insofar as it's possible to do so.

4              MR. TAHA:  Yes.

5              THE COURT:  Then we have the interesting

6    question when Atek converted, if it did, the unpaid

7    Subchapter S dividends into a loan.  And you have

8    adverted to that, Mr. Taha.  When did that occur?

9              MR. TAHA:  Your Honor, number one, there is no

10   dividends as such.

11             THE COURT:  Well, it wasn't paid.  It was

12   declared for tax purposes.  That's what I'm driving at.

13             MR. TAHA:  It was declared for tax purposes,

14   and the Plaintiffs, Shareholder Mr. Mohamed Taha, paid

15   his taxes due on that income that was received from Atek

16   as a shareholder income.

17             THE COURT:  Right.

18             MR. TAHA:  I don't know if that answers your

19   question or if I understood your question correctly.

20             THE COURT:  Well, was the unpaid amount, if you

21   will, converted into a note --

22             MR. TAHA:  Promissory note.

23             THE COURT:  What?

24             MR. TAHA:  It was -- Atek has returned a

25   promissory note to its shareholders for money -- for

Mohamad E. Taha, et al. v. USA                                    9/5/2019

1    monies that were maintained in order to keep its

2    operation ongoing.  So it issued the promissory note for

3    the -- for the -- for the -- for the income that

4    shareholders received as loans to Atek.

5                    THE COURT:  When did that --

6                    MR. TAHA:  There are promissory notes.

7                    THE COURT:  When were those promissory notes

8    actually issued?

9                    MR. TAHA:  They were issued -- Your Honor,

10   there -- I published them several times -- or not

11   published them, I basically -- they were part of the

12   proof of the evidence for the bad debt.

13                   THE COURT:  Right, I understand that.

14                   MR. TAHA:  They were provided.

15                   THE COURT:  I just --

16                   MR. TAHA:  They were provided.  They were --

17   one was issued in two thousand -- I believe one -- for

18   2002, it was issued in 2003; and for 2003, it was issued

19   in 2004.

20                   THE COURT:  All right, but that's helpful.

21                   And, Ms. Kanyer, you're aware of that

22   allegation; is that correct?

23                   MS. KANYER:  Yes.  We are aware of that

24   allegation.  You know, we still believe that this is

25   nonbusiness debt and that the notes -- it's really a

Mohamad E. Taha, et al. v. USA                              9/5/2019

1    capital contribution and not a bona fide debt.

2              THE COURT:  That's a legal argument based on

3    facts, but we'll have to address that when we come to

4    trial.

5              Okay, I take it, Mr. Taha, it is possible to

6    view Atek as a family business corporation, or a family

7    enterprise.  Is that correct?

8              MR. TAHA:  Yes, Your Honor.  Atek was a family-

9    owned -- it was a private, family-owned, incorporated as

10   an S corporation.

11             THE COURT:  All right.  That's something that

12   will have to be established at trial, but you've

13   definitely made that allegation and you've supported it.

14             Okay.  I think we're ready to --

15             MR. TAHA:  Your Honor?

16             THE COURT:  Yes.

17             MR. TAHA:  May I make one other -- just a short

18   comment here about whether the business -- the debt was a

19   business debt?

20             THE COURT:  Certainly.

21             MR. TAHA:  Did the Government provide you, Your

22   Honor, because it did not provide me with evidence except

23   saying and more saying and more saying, Your Honor, that

24   the debt was nonbusiness.  Did the Government provide you

25   with evidence it was nonbusiness, Your Honor?  Whereas

Mohamad E. Taha, et al. v. USA                              9/5/2019

1    Plaintiffs did provide the courts with preponderance of

2    evidence for it's business bad debt, and that evidence

3    was over a dozen documents that I provided on behalf of

4    Plaintiffs that prove the debt was business debt because

5    the bonding companies took over Atek and rendered Atek

6    inoperative or whatever the term is, dissolved,

7    dissolved.  Atek was dissolved.

8               THE COURT:  Right.

9               MR. TAHA:  I'm sorry.

10              THE COURT:  No, I understand.  I think the

11   Court understands your position.

12              MR. TAHA:  I really -- Your Honor, again, there

13   ought to be evidence of whatever the Government is

14   alleging.

15              THE COURT:  Well, we'll find out.  That's part

16   of the exercise.  It's just -- let me just emphasize to

17   both parties, we ought to have the subpoenas issued to

18   the shareholders; we ought to get responses; we ought to

19   have the complete responses of the bonding companies; and

20   then we ought to move forward with the preparations for

21   trial.

22              MS. KANYER:  Your Honor, I would like -- I plan

23   to issue a notice for -- or a notice for a deposition.

24   My concern is just the amount of time we have left.  We

25   have less than four weeks left for getting these document

Mohamad E. Taha, et al. v. USA                                9/5/2019

 1    responses back and scheduling depositions.

 2              THE COURT:  If you want an extension -- well,

 3    you might be able to get the responses back.  On the

 4    other hand, a very short extension might be possible.  If

 5    so, you're going to have to ask for it after you've

 6    issued the subpoenas and scheduled the depositions.

 7              MS. KANYER:  Okay.  Understood.  Thank you,

 8    Your Honor.

 9              THE COURT:  Thank you.

10              MR. TAHA:  Your Honor, I have been -- I have

11    been extremely -- I honestly believe, Your Honor, and --

12    believe that I have been respectful.  I have been

13    extremely cooperative.  I have been extremely

14    volunteering in providing documents when I'm not supposed

15    to do that as a counsel or as actually a representative.

16              THE COURT:  Well --

17              MR. TAHA:  But I have been cooperating with the

18    Government.

19              THE COURT:  Let me -- Mr. Taha, let me just

20    interrupt to say, you have the burden of proof of

21    establishing not only that a tax return -- asking for a

22    refund, or, I'm sorry, it's not a tax return, a refund

23    claim was filed respecting 2003, and you have the

24    responsibility of establishing that a business bad debt

25    was involved.  And --

Mohamad E. Taha, et al. v. USA                              9/5/2019

```
1              MR. TAHA:  Absolutely, Your Honor.  I agree
2    with you.
3              THE COURT:  All right.
4              MR. TAHA:  Which I have.
5              THE COURT:  Well, but that's what I'm saying.
6    Basically, let's just let this play out.  We're taking
7    too much time on all these preliminary matters when we
8    just ought to address it specifically and get on with the
9    preparations for trial.  It will be a lot simpler and
10   take less time from everyone.
11             MR. TAHA:  I have -- okay, Your Honor.  I have
12   two requests if you don't mind.
13             THE COURT:  Yes, yes.  No.
14             MR. TAHA:  One request is not to harass my
15   family.
16             THE COURT:  Well, I think Ms. Kanyer is aware
17   of the circumstances.
18             MR. TAHA:  But counsel demands that, Your
19   Honor, and I am willing to give you -- but I hate to do
20   that -- I'm willing to dig out from the telephone
21   companies all these phone calls that counsel did, or
22   counsel's assistant did.
23             THE COURT:  Let's put that in the past and save
24   you the time and effort in undertaking that effort.
25             MR. TAHA:  Okay.
```

30
Mohamad E. Taha, et al. v. USA                                    9/5/2019

1              THE COURT:  It's just -- it's not going to help
2       in the preparation of the case.  Ms. Kanyer is well aware
3       of your sensitivity.
4              MS. KANYER:  Your Honor, may I ask -- maybe
5       just a clarifying point?  We at this point don't have
6       contact information, so we don't -- I don't want to -- I
7       don't want to go and have to make multiple phone calls
8       again.  We're happy to get process service if that would
9       be the most effective way of going about it, but if Mr.
10      Taha has the information so that we can call the right
11      person, it would be very much appreciated.
12             THE COURT:  Why don't you separately -- not on
13      this conference or hearing -- but separately identify to
14      Mr. Taha the persons to which you issue -- wish to issue
15      subpoenas, and he can provide the information or not.
16      Otherwise, you're going to have to use process service.
17             MS. KANYER:  Great.  Thank you.
18             THE COURT:  Thank you.
19             MR. TAHA:  My final request, Your Honor, is it
20      possible -- due to affordability, is it possible to have
21      the Court issue, if you want to call it, a hard copy of
22      this conference?
23             THE COURT:  Oh, the transcript would be
24      available.  There's no doubt about that.
25             MR. TAHA:  Yeah, but it's not affordable, Your

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Mohamad E. Taha, et al. v. USA                    9/5/2019

    1    Honor.

    2              THE COURT:  It isn't?

    3              MR. TAHA:  No.

    4              THE COURT:  Oh.  Ms. Kanyer, do you have a

    5    view?

    6              MS. KANYER:  We will be requesting the

    7    transcript, and we can provide Mr. Taha with a copy.

    8              THE COURT:  Does that satisfy you, Mr. Taha?

    9              MR. TAHA:  That would be appreciated, Your

   10    Honor.

   11              THE COURT:  All right.  That will help.  Thank

   12    you, Ms. Kanyer, and thank you, Mr. Taha.

   13              MR. TAHA:  Thank you so much.

   14              THE COURT:  No, that's not a problem.  And the

   15    Court appreciates the cooperation of the parties in

   16    solving that small problem.

   17              Is there anything further that we can usefully

   18    address this afternoon?

   19              MR. TAHA:  Your Honor, I just would like to

   20    reemphasize what I have explained about counsel's contact

   21    to my family.  I would like to reemphasize that, and I

   22    would not -- I know even Ms. Kanyer mentioned something

   23    in this regard, that she may refrain from contacting

   24    family members of my own.

   25              THE COURT:  Well, I think you can solve that

Mohamad E. Taha, et al. v. USA                              9/5/2019

1    problem by providing appropriate addresses and other
2    contact information to Ms. Kanyer.
3          MR. TAHA:  As long as the personnel are
4    relevant to the case, Your Honor.
5          THE COURT:  If they're shareholders, then it's
6    allowed.
7          MR. TAHA:  I'm sorry, Your Honor?
8          THE COURT:  If they're shareholders or were
9    shareholders in Atek, it's allowable.
10         MR. TAHA:  My wife is not a shareholder, Your
11   Honor.
12         THE COURT:  No, I understand.  I don't think
13   Ms. Kanyer has any interest in contacting your wife.
14         MR. TAHA:  Or my daughter.
15         THE COURT:  Or your daughter.
16         MR. TAHA:  I'll take her word and your word,
17   Your Honor.
18         THE COURT:  All right, good.  We try to be
19   responsible and otherwise address things in a manner --
20   as a matter of justice.  And I'm sure Ms. Kanyer would
21   have the same view.
22         MS. KANYER:  Your Honor, that is correct.  I
23   will note that if you look at the promissory note, there
24   is a notary stamp by Tamara Taha, so I wouldn't say that
25   I won't have any questions related to that, but I don't

33
Mohamad E. Taha, et al. v. USA                              9/5/2019

1    anticipate subpoenaing or taking a deposition of Ms.

2    Taha.

3              THE COURT:  All right.  Thank you for the

4    clarification.

5              Anything further, Mr. Taha?

6              MR. TAHA:  No, Your Honor.

7              THE COURT:  All right, thank you.

8              Ms. Kanyer?

9              MS. KANYER:  Nothing from the Government, Your

10   Honor.

11             THE COURT:  Thank you.  We'll try to issue an

12   order tomorrow.

13             MS. KANYER:  Thank you, Your Honor.

14             THE COURT:  All right.

15             MR. TAHA:  Thank you, Your Honor.

16             THE COURT:  All right.  Thank you, indeed.

17             (Whereupon, at 3:13 p.m., the hearing was

18   adjourned.)

19

20

21

22

23

24

25

34

Mohamad E. Taha, et al. v. USA                                    9/5/2019

```
 1                  CERTIFICATE OF TRANSCRIBER

 2

 3          I, Sara J. Vance, court-approved transcriber,

 4    certify that the foregoing is a correct transcript from

 5    the official electronic sound recording of the

 6    proceedings in the above-titled matter.

 7

 8

 9

10    DATE:  9/16/19            s/Sara J. Vance

11                             SARA J. VANCE, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```