```
 1              IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3
 4    MOHAMAD E. TAHA (Deceased),    )
 5        and                        )
 6    SANAA M. YASSIN, his wife,     ) Case No.
 7        Plaintiffs,                ) 17-1174T
 8              vs.                  )
 9    UNITED STATES OF AMERICA,      )
10        Defendant.                 )
11
12
13                          Suite 716
14         Howard T. Markey National Courts Building
15                   717 Madison Place, N.W.
16                      Washington, D.C.
17                  Friday, December 6, 2019
18                         2:30 p.m.
19                          Hearing
20
21
22        BEFORE:   THE HONORABLE CHARLES F. LETTOW
23
24
25    Transcribed by:  Matthew P. Tate, CERT
```

Mohamad E. Taha, et al. v. USA                                    2
                                                           12/6/2019

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFF:
 3           ALI M. TAHA
 4           247 Dove Trail
 5           Bradenton, Florida  34212
 6           (941) 896-3471
 7
 8   ON BEHALF OF THE DEFENDANT:
 9           ELIZABETH A. KANYER, ESQ.
10           DAVID PINCUS, ESQ.
11           U.S. Department of Justice - Tax Division
12           Post Office Box 480
13           Ben Franklin Station
14           Washington, DC  20044
15           (202) 514-0600 / (202) 514-9440 (fax)
16           elizabeth.a.kanyer@usdoj.gov
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                       -    -    -    -    -
 3              (Proceedings called to order, 2:29 p.m.)
 4              THE COURT:  Mr. Taha, would you identify
 5     yourself for the record as the representative of the
 6     Plaintiffs?
 7              MR. TAHA:  Yes, Your Honor.  Ali Taha.
 8              THE COURT:  Thank you.
 9              And, Ms. Kanyer, would you identify yourself
10     for the record as counsel for the Government?
11              MS. KANYER:  Elizabeth Kanyer for the United
12     States.
13              THE COURT:  Thank you.  We have in hand the
14     United States' motion in limine to exclude the testimony
15     of Joseph Dianto (phonetic).  I'm not sure I'm
16     pronouncing that right.
17              MR. TAHA:  Joseph Dianto.
18              THE COURT:  Dianto?
19              MR. TAHA:  Yes, sir.  Yes, Your Honor.
20              THE COURT:  All right.  Thank you.  And the
21     United States' motion for an emergency hearing on the
22     subject, which the Court obviously has granted through
23     the scheduling of this conference.
24              Ms. Kanyer, would you restate your position for
25     the record.
```

1      MS. KANYER:  Sure, Your Honor.  We are asking
2 the Court to exclude the testimony of Joseph Dianto for
3 three reasons.  First, it was not -- the subpoena was not
4 properly served.  Mr. Dianto has not, in fact, received
5 the subpoena, and it was not -- so it was not personally
6 served.  There were no fees tendered with that service.
7 And the rules do require personal service, and it does
8 require it to, in fact, be served to the named party.  So
9 we request on that grounds that the Court exclude Mr.
10 Dianto's testimony.
11      If the Court were to find that it was properly
12 served, which we don't think it was, we would ask the
13 Court to quash the subpoena because it did not allow
14 reasonable time to comply, as Mr. Dianto has not, in
15 fact, actually received the subpoena, but was only even
16 notified either Monday or Tuesday after we spoke.  He is
17 actually not in Philadelphia, where we believe it was
18 served -- or it was mailed.  He lives in Atlanta, which
19 is more than 400 miles from where trial is scheduled, and
20 he's not a party or a party officer.  So we believe it
21 would incur substantial burden and expense.
22      In addition, reason number two, Mr. Dianto
23 is not listed in Plaintiffs' pretrial memorandum of
24 intention of law.  In fact, the Court, in its April
25 10th scheduling order, required Plaintiffs to list

```
 1   their witnesses.  Plaintiff did not list any witnesses,
 2   and they did not list Mr. Dianto, and they have not
 3   sought leave to amend their witness list.  And so we
 4   believe that they violated the Court's order, and we ask,
 5   again, that the Court would exclude the testimony of Mr.
 6   Dianto.
 7            Reason number three is we believe that's he's
 8   not relevant.  I spoke with him this morning.  He does
 9   not know anything about the Tahas or this case.  You
10   know, he was managing at that time in 2006, you know,
11   3,500 employees.  Documents were regularly generated with
12   his name.  So we don't believe he would have any relevant
13   testimony.  The documents that Plaintiff referenced are
14   all in relation to a year that was dismissed, tax year
15   2004.
16            And, finally, this is a de novo proceeding.  So
17   we don't believe that he's relevant.  So in sum, Your
18   Honor, we have -- for those three reasons, we believe
19   that the testimony should be excluded.
20            THE COURT:  Mr. Taha, I take it you really want
21   Mr. Dianto's testimony because he might have percipient
22   -- or be a percipient witness as to the bad debt aspect
23   of the refund claim.  Is that correct?
24            MR. TAHA:  Yes, Your Honor.
25            THE COURT:  You do have other evidence, though,
```

```
 1   that relates to the bad debt aspect.  Is that correct?
 2              MR. TAHA:  That is correct, but the major
 3   evidence of owner is a 2004 amended tax return that was
 4   filed within the seven-year statute, to which Mr. Dianto
 5   determined it was correctly filed.
 6              THE COURT:  We're really dealing with 2003 at
 7   this point.
 8              MR. TAHA:  No --
 9              THE COURT:  I'm sorry.  Go ahead.
10              MR. TAHA:  No, Your Honor.  We are dealing with
11   the whole claim.
12              THE COURT:  That is --
13              MR. TAHA:  2002 and 2003 as amended, or 2004
14   inclusive of 2002 and 2003 as you, Your Honor, confirmed
15   during the April 5th telephonic conference that we're
16   going to deal with this as a de novo.
17              THE COURT:  That's --
18              MR. TAHA:  A brand new trial for the whole
19   claim --
20              THE COURT:  That is true.
21              MR. TAHA:  -- regardless whether it was filed
22   in 2002 and 2003 or both years amended and 2004, to which
23   Mr. Dianto determined it was correctly filed.
24              THE COURT:  We are dealing with it as a de novo
25   claim, and it does relate to refund claims that were
```

```
 1   filed after the original returns were submitted.  So the
 2   Court confirms that.  One of the problems is that the
 3   subpoena appears not to have been properly issued.  And
 4   if the Court had concerns that there were no other way
 5   for evidence of the bad debt aspect to be adduced at
 6   trial, then I would have a concern about the ability of
 7   the trial itself, but I am actually of the view that you
 8   have other means of getting bad debt evidence in at
 9   trial, Mr. Taha.
10           MR. TAHA:  Yes, Your Honor, you are correct,
11   but that evidence which I have provided, and I'm going to
12   provide again in court during trial -- I'm sorry.  During
13   trial, I will provide that evidence again, but out -- and
14   that evidence, Your Honor, was ignored -- respectfully --
15   ignored by Defendant and the Court.  It was -- that
16   evidence was never, ever mentioned, Your Honor, in any
17   order or in any motion that Defendant filed.
18           THE COURT:  Well, I understand that, but on the
19   other hand, we are trying the bad debt aspect of this
20   thing de novo.  So you can adduce whatever evidence or
21   put forward whatever evidence you have on that particular
22   subject.  I'm sure Ms. Kanyer would accept that
23   proposition.
24           Ms. Kanyer?
25           MS. KANYER:  That's correct, Your Honor.
```

```
 1              THE COURT:  All right.  I think we're on the
 2   same page, but --
 3              MR. TAHA:  Your Honor?
 4              THE COURT:  Yes.
 5              MR. TAHA:  Would you explain this -- what you
 6   asked Ms. Kanyer that -- are you asking her about the
 7   claim in full for both 2002 and 2003 individually filed
 8   or for 2004 that was inclusive of the 2002 and 2003?
 9              THE COURT:  It has to --
10              MR. TAHA:  Your Honor, let me define 2004
11   income tax -- amended income tax for tax refund.  2004,
12   the reason it was filed or reconsidered in lieu of 2002
13   and 2003 claims was because 2004 was the year within
14   which the income -- shareholder income became bad debt.
15   That is the only reason.  Otherwise either claim is
16   correct.
17              THE COURT:  Well, I -- there's no doubt, at
18   least based on what the Court knows, but we have to prove
19   it at trial, that the promissory notes became worthless
20   in 2004.  Well, at least, they became worthless in 2006,
21   but in any event, they probably became worthless in 2004,
22   as well.  We can deal with that at trial.  That's not
23   really an aspect of the dispute at issue, as the Court
24   understands it.
25              But on the other hand, the Court is prepared to
```

```
 1   be educated at trial about what the circumstances really
 2   were as these years were transpiring.
 3              MR. TAHA:  Do I understand, Your Honor --
 4              THE COURT:  Yes?
 5              MR. TAHA:  -- that the promissory note has a
 6   life?
 7              THE COURT:  Well, I'm sure it did.  It probably
 8   doesn't anymore.
 9              MR. TAHA:  No.  My question, Your Honor, does
10   the promissory note have a life when it is issued?
11              THE COURT:  Well, I'm sure it had a life, but
12   the question is whether or not it -- and Ms. Kanyer can
13   elaborate, but we can do this at trial, as well --
14   whether it actually constituted a bad debt or not.  She
15   has raised arguments about whether or not it really was a
16   retention of capital.
17              Ms. Kanyer?
18              MS. KANYER:  That's correct, Your Honor.
19              MR. TAHA:  Okay.  Your Honor, let me respond,
20   please.
21              THE COURT:  Yes, certainly.
22              MR. TAHA:  The promissory -- the intent of the
23   promissory note was to prove that Shareholder Taha was
24   owed money, and that money was lost.  It's not to prove
25   the bad debt, per se, specifically.  That was not the
```

1    intent.  There is -- there were promissory notes that
2    started being issued by Atek in -- for 1996 when Atek was
3    established.  Do these notes have any value?  Of course
4    not, not anymore, but the value of the promissory note is
5    to prove that the debtor owes money to the shareholder in
6    this case.
7               THE COURT:  That --
8               MR. TAHA:  It's not to prove the bad debt, Your
9    Honor.
10              THE COURT:  That, we can address at trial.  We
11   also, insofar as the bad debt is concerned, have to
12   address the nature of the promissory notes, and we have
13   to address the nature of the bankruptcy and I almost
14   think the dissolution proceedings.  I'm not sure Atek was
15   ever formally dissolved.  It just ceased functioning, but
16   we'll have to cover all that at trial.
17              MR. TAHA:  Atek does not exist, Your Honor,
18   anymore.
19              THE COURT:  Good.
20              MR. TAHA:  So it dissolved.
21              THE COURT:  All right.  That we have to cover
22   at trial.
23              MR. TAHA:  Sure.
24              THE COURT:  But the Court will grant the motion
25   in limine to exclude the testimony of Joseph Dianto,

1   primarily because the subpoena, at this juncture, is
2   improper, and it's not readily apparent that Mr. Dianto's
3   administrative views on the subject have any bearing on
4   the de novo trial of the issues that we have before us.
5   So we don't expect Mr. Dianto to appear as a witness at
6   trial in response to the subpoena.  If he comes
7   voluntarily, that's another matter, but the Court is
8   dubious that that will happen.  Okay.
9           Ms. Kanyer, anything further?
10          MS. KANYER:  One administrative point.  We had
11  talked, I believe on Monday, about Plaintiffs' exhibits.
12  We just wanted to let you know that we -- in printing our
13  exhibits for trial, we have also printed a set of
14  Plaintiffs' exhibits for the Court, the Court's clerk,
15  and also the witness box.
16          THE COURT:  That is very gracious of you, and
17  I'm sure Mr. Taha appreciates it, as well.
18          MR. TAHA:  Thank you.
19          Your Honor?
20          THE COURT:  Yes?
21          MR. TAHA:  I believe, if I recall right, you
22  requested three copies to be presented in trial for the
23  exhibits?
24          THE COURT:  That's exactly what Ms. Kanyer has
25  just stated.

```
 1              MR. TAHA:  I'm sorry.  I didn't -- I just
 2   wanted to confirm that, on my side, that I do present
 3   three copies -- one for the Court, one for Ms. Kanyer,
 4   and one for the court reporter, I believe.
 5              THE COURT:  Well, that's not necessarily right.
 6   Ms. Kanyer indicates she has copied already what you had
 7   put forward as your exhibits.
 8              Ms. Kanyer, is that correct?
 9              MS. KANYER:  That's correct.  Based on our
10   conversation from Monday, I was not clear whether or
11   not Plaintiffs were going to be able to provide copies.
12   And so since we were printing copies for ourselves, we
13   figured we could go ahead and print them for the Court
14   and the witness, and I believe we have five copies that
15   will be coming.  It's either four or five copies that
16   are printed and on their way to Tampa as we speak.
17              THE COURT:  Mr. Taha, does that answer your
18   question?
19              MR. TAHA:  In a way, yes, it does, but I
20   thought initially that you, Your Honor, indicated that
21   whatever was provided in the memorandum of contentions
22   would not be used.
23              THE COURT:  Well --
24              MR. TAHA:  Therefore, you requested a fresh,
25   new copy of the exhibits, and that's what I was working
```

1   on.

2           THE COURT:  Oh, I don't think you have to work
3   on it because it sounds like Ms. Kanyer has already done
4   it for you.

5           MR. TAHA:  Okay.  If that's acceptable to you,
6   Your Honor, that's fine with me, too.

7           THE COURT:  All right.  I think we're good all
8   the way around.

9           MR. TAHA:  Because I'm confused, sorry.

10          THE COURT:  No, I just think Ms. Kanyer has
11  done us a bit of a good turn here by making sure that we
12  have what we need in Tampa for the trial.

13          MR. TAHA:  And that's appreciated, Your Honor.
14  I thank Ms. Kanyer about that.  And so that saves me
15  money.

16          THE COURT:  It will, and also aggravation.

17          MR. TAHA:  And aggravation.

18          THE COURT:  All right.

19          Ms. Kanyer?

20          MR. TAHA:  I do sound aggravated, don't I, Your
21  Honor?

22          THE COURT:  Oh, no, I think we're fine.  Okay.
23  I think we're ready, and we'll see each other in Tampa at
24  the appointed place at 9:30 in the morning.

25          Anything further?

```
 1              MS. KANYER:  No, Your Honor.
 2              MR. TAHA:  Your Honor?
 3              THE COURT:  Yes?
 4              MR. TAHA:  Maybe -- maybe just a little note,
 5    short note --
 6              THE COURT:  Yes?
 7              MR. TAHA:  -- about the opening statement?
 8              THE COURT:  Yes?
 9              MR. TAHA:  I think you mentioned some time
10    limitation of 15 minutes.
11              THE COURT:  That's correct.
12              MR. TAHA:  If it goes 16, 17 minutes, it's not
13    going to be acceptable.
14              THE COURT:  Well, I urge you not to do that
15    because we have, you know, two days allocated for trial,
16    and we ought to stick to a fairly concise time frame, but
17    what we need to do is to get all the testimony and
18    evidence in.  The Court generally understands the case as
19    it stands.
20              MR. TAHA:  Well, Your Honor, the reason I'm
21    asking is because I'm facing multiple defendants here and
22    support by the Court.  And I'm facing 12 years of the
23    life of the claim, with six IRS centers.  So, Your Honor,
24    I have to spell all of this out in my opening statement.
25    It's a must.
```

```
 1                THE COURT:  Well, I understand --
 2                MS. KANYER:  Your Honor?
 3                THE COURT:  Yes, Ms. Kanyer?
 4                MS. KANYER:  I just wanted to mention that
 5   David Pincus just stopped by.  So I wanted to announce
 6   him for the record.
 7                THE COURT:  All right.
 8                MR. PINCUS:  Sorry I'm late, Judge.
 9                THE COURT:  I'm sorry, what was that, Mr.
10   Pincus?
11                MR. PINCUS:  Sorry I was late.  I wanted to get
12   a clean bill of health before I went down there, which I
13   do.
14                THE COURT:  All right.  I must say, Mr. --
15                MR. TAHA:  I'm having problems hearing you,
16   Your Honor, but that's okay.
17                THE COURT:  All right.  Mr. Taha, it is
18   difficult to move around Washington today.  It was
19   difficult last afternoon and evening, as well.  It's just
20   that there are different causes.  Today, there are sets
21   of protests in and around Washington, and there are other
22   things going on.  But in any event, I think we're ready
23   for trial.  And if you go a minute or so over, Mr. Taha,
24   that's not going to pose a problem.
25                MR. TAHA:  Okay, Your Honor.  Thank you so
```

```
 1   much.  And just to let you know and Ms. Kanyer, sometimes
 2   I will experience hearing because I wear hearing aids.
 3   So just for you to -- this should not be on the record,
 4   but I've already said that I do get problems hearing at
 5   times.
 6               THE COURT:  All right.  That's not an unusual
 7   circumstance for people, and we'll take that into account
 8   at trial.
 9               MR. TAHA:  Especially with my age.
10               THE COURT:  All right.  Thank you.  Okay.
11               MR. TAHA:  You sound young, Your Honor.
12               THE COURT:  No, I try to act young, but I'm
13   not.  But in any event, we'll just take it as it goes.
14               MR. TAHA:  Well, Ms. Kanyer is obviously very
15   young, too.
16               THE COURT:  I'm sure she thinks so, too.
17               MS. KANYER:  I won't comment on that, Your
18   Honor.
19               THE COURT:  Whether she acts that way is
20   another matter.  All right.  Thank you.
21               MR. TAHA:  Well, we need to spice our
22   conversation sometimes, Your Honor.
23               THE COURT:  Okay.  Thank you.
24               MR. TAHA:  Thank you.
25               THE COURT:  Yep.  Bye.
```

Mohamad E. Taha, et al. v. USA                                    17
                                                          12/6/2019

 1              MS. KANYER:  Bye.
 2              MR. PINCUS:  Thank you.
 3              (Whereupon, at 2:46 p.m., the hearing was
 4     adjourned.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Mohamad E. Taha, et al. v. USA

18
12/6/2019

```
 1                   CERTIFICATE OF TRANSCRIBER
 2
 3          I, Matthew P. Tate, court-approved transcriber,
 4   certify that the foregoing is a correct transcript from
 5   the official electronic sound recording of the
 6   proceedings in the above-titled matter.
 7
 8
 9
10   DATE:  12/19/2019         s/Matthew P. Tate
11                             MATTHEW P. TATE, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```